**No. 16-30177**

14-CR-00161-WFN

_____

**THE UNITED STATES COURT OF APPEALS
IN AND FOR THE NINTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

                                    Plaintiff/Appellee,

v.

CRAIG ALLEN MORGENSTERN,

                                    Defendant/Appellant.

_____

Appeal from the United States District Court
For the Eastern District of Washington

_____

BRIEF OF APPELLANT

                         Bryan P. Whitaker
                         Attorney for Appellant

                         815 W. 7th Ave., Suite 303
                         Spokane, WA  99204
                         (509) 315-9947

**Table of Contents**

Table of Authorities ............................................................................... iii

Jurisdictional Statement ........................................................................ 1

A.  District Court Jurisdiction ...........................................................1

B.  Court of Appeals Jurisdiction .....................................................1

C.  Timeliness of Appeal ..................................................................1

D.  Statement of Finality ..................................................................1

E.  Detention Status .........................................................................1

Issues Presented for Review................................................................ 2

Statement of the Case.......................................................................... 3

Statement of Facts............................................................................... 6

Summary of the Argument..................................................................10

Argument.............................................................................................11

A.  Evidentiary Issues .....................................................................11

    1.     Sexual Act v. Sexually Explicit Conduct ..............................12

    2.     Evidentiary Presentation .......................................................13

B.  Sixth Amendment Issues ...........................................................15

    1.     Impartial Jury .......................................................................15

        a. Witnesses not exluded.........................................................15

        b. Sleeping Juror .....................................................................16

        c. Deliberations .......................................................................17

    2.     State and District wherein the crime shall have been committed............18

        a. Continuing Offense v. Committed Offense. ........................18

        b. Formulating Intent ..............................................................19

C.  Cumulative Error .......................................................................20

Conclusion ................................................................................................21

Certificate of Compliance ........................................................................22

Statement of Related Cases ......................................................................23

Certificate of Service ...............................................................................24

**Table of Authorities**

**United States Constitution, Amend. VI.** ...........................................................15

**Statutes**

18 U.S.C. § 2241.............................................................................................2, 3, 14

18 U.S.C. § 2246(2) ................................................................................................11

18 U.S.C. § 2251(a) ................................................................................................. 3

18 U.S.C. § 2252A(a) .............................................................................................. 3

18 U.S.C. § 2256(2)(A)...........................................................................................11

18 U.S.C. § 3231...................................................................................................... 1

18 U.S.C. § 3510.....................................................................................................16

28 U.S.C. § 1291...................................................................................................... 1

**Rules**

Fed. R. App. P. 4(b)(1)(A) ...................................................................................... 1

Fed. R. App. P. 32(a)(5),(6) &(7)(B).....................................................................22

Fed. R. Crim. Pro. 29 ....................................................................................... 13-14

Fed. R. Crim. Pro. 52(b)..........................................................................................16

Fed. R. Evid. 615 .............................................................................................. 15-16

**Jurisdictional Statement**

**A. District Court Jurisdiction**

The United States District Court for the Eastern District of Washington has original jurisdiction over this matter under 18 U.S.C. § 3231 as an offense against the United States committed within the District.

**B. Court of Appeals Jurisdiction**

The Court of Appeals has jurisdiction over this matter as a post-sentence appeal of a final judgment in a criminal matter under 28 U.S.C. § 1291.

**C. Timeliness of Appeal**

In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the entry of either the judgment or the order being appealed. Fed. R. App. P. 4(b)(1)(A). Final Judgment was entered on July 27, 2016 and Notice of Appeal filed in the District Court on August 1, 2016.

**D. Statement of Finality**

This appeal is taken from a final Judgment and Sentence entered in a criminal case.

**E. Detention Status**

The Appellant is in the custody of the United States Marshal and has been sentenced to Life Imprisonment.

**Issues Presented for Review**

1.  Is there sufficient evidence of sexual acts as opposed to sexually explicit conduct to uphold convictions for Aggravated Sexual Assault in violation of 18 U.S.C. § 2241(c)?

2.  Is there sufficient evidence of sedation to uphold convictions for Aggravated Sexual Assault in violation of 18 U.S.C. § 2241(c)?

3.  Did the jury instructions properly define the venue element for the crime of Aggravated Sexual Assault in violation of 18 U.S.C. § 2241?

4.  Was the right to a fair and impartial jury affected by permitting victims and their families to remain in the courtroom during all the testimony?

5.  Was there jury misconduct that affected the right to a fair trial?

**Statement of the Case**

On October 19, 2014 Craig Morgenstern was arrested by the Stevens County Sheriff's Office based on an allegation of sexual assault against a juvenile male who had been spending the night at Morgenstern's home. After posting bail Morgenstern was arrested again by the Stevens County Sheriff's Office and then turned over to agents of the Federal Bureau of Investigation. On October 24, 2014 a Criminal Complaint was filed in the Eastern District of Washington alleging violations of 18 U.S.C. § 2251(a), Production of Child Pornography, and 18 U.S.C. § 2241 (c), Interstate Transportation of a Minor under 12 years old to Engage in Sexual Activity. Morgenstern has been detained since his arrest on that date.

A Grand Jury returned a nine count Indictment on November 4, 2014 charging Morgenstern with the following:

1. Travel with Intent to Engage in Illicit Sexual Contact with a Child (3 counts) in violation of 18 U.S.C. § 2423(b);

2. Production of Child Pornography (4 counts) and one count of Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a);

3. Aggravated Sexual Abuse of a Child in violation of 18 U.S.C. § 2241(c).

Notice of Forfeiture under 18 U.S.C. § 2253 was also given. He was arraigned on the indictment on November 5, 2014.

A Superseding Indictment was filed on April 4, 2015, amending as follows:

1.  Thirteen additional counts of Aggravated Sexual Abuse of a Child in violation of 18 U.S.C. § 2241(c);

2.  Thirteen additional counts of Production or Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a);

3.  Two counts of Transportation with Intent to Engage in Sexual Contact with a Child in violation of 18 U.S.C. § 2423(a);

4.  Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2);

5.  Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

Travel with Intent to Engage in Illicit Sexual Contact with a Child in violation of 18 U.S.C. § 2423(b) was deleted and the forfeiture allegation remained.

A Second Superseding Indictment was returned on December 1, 2015 with no substantive changes. The Third Superseding Indictment was filed on January 5, 2016 and the case proceeded to trial on that Indictment.

After various pretrial motions a jury trial on 35 of the counts in the Third Superseding Indictment[1] began on February 22, 2016. The case was submitted to the jury late in the afternoon on February 29, 2016. Deliberations began and concluded on March 1, 2016. Guilty verdicts were returned on all counts.

A motion for New Trial was filed by Morgenstern on March 8, 2016. That motion was denied after an evidentiary hearing on March 16, 2016. The matter proceeded to sentencing on July 25, 2016, at which time the court imposed twelve concurrent Life sentences. This appeal follows.

---

[1] Count 19 was dismissed on the Government's motion before trial.

**Statement of Facts**

In 2008 Craig Morgenstern, D.O., was employed as a physician at hospitals located in Meridian, Mississippi and Spokane, Washington. Originally residing in Mississippi, he moved his primary residence to Spokane and from there would travel regularly to work in Meridian. During this time Morgenstern was acquainted with a minor child residing in Meridian identified as Person A.

The two spent time together regularly when Morgenstern was working in Meridian, including Person A staying overnight in Morgenstern's hotel room in September and an unaccompanied overnight trip to Tennessee in October. A second minor child, identified as Person F, was present during an overnight visit with Morgenstern and Person A in December. Contact continued through 2009.

In April 2010 Morgenstern, accompanied by the three minor children of a long-time friend, traveled from Spokane, WA to spend a weekend at a family fun resort in Hayden, Idaho. The children, Persons B, C, and E, lived in Post Falls, ID with their parents, who dropped them off at the facility upon meeting up with Morgenstern. A second trip involving these three children and a fourth minor child, Person D, took place in November 2010, again at a location in Hayden, ID.

In January 2011 Person A traveled from Meridian, MS to Spokane, WA on a flight paid for by Morgenstern, and stayed for approximately two weeks. Person A

6

visited Morgenstern again in June, returning to Meridian, MS in August. Person A lodged with Morgenstern at his residence in Washington each time.

October 1, 2014 Person D had an unsupervised overnight visit with Morgenstern at his residence in Stevens County, WA. A second overnight stay occurred on October 17, 2014. Early the morning of October 18, 2014 Person D left Morgenstern's residence and made contact with a nearby neighbor. Person D informed the neighbor that Morgenstern had sexually abused him and he believed had photographed the incident. The police were contacted.

Approximately half an hour later Stevens County Sheriff Deputies arrived at the neighbor's home and contacted Person D inside. Morgenstern, who lived about one quarter mile away, arrived the same time as the deputies. Based on allegations made by Person D, the deputies requested permission to search Morgenstern's house for evidence supporting the allegations. An initial search revealed no such evidence. The deputies then requested permission for a second search for purposes of photographing the interior of the home and its contents. In the interim Person D was referred to a local hospital for a Sexual Assault Exam. A toxicology screen was also advised as Person D indicate he felt he had been administered some type of sedative and thereby rendered unconscious.

A search warrant for Morgenstern's home was obtained on October 19, 2014. Numerous cameras and computer peripherals were seized and additional

photos of the home were taken. A comparison of the photographs taken of the home showed that some items present on October 18 were no longer in the home at the time the search warrant was executed, including an iPhone and iPad. Morgenstern stayed at a friend's residence during this time.

A forensic examination of one of the seized cameras revealed a deleted video file depicting child pornography from 2011. A continued examination of cameras and equipment indicated the previous deletion of numerous photos and videos depicting child pornography.

As the investigation continued the toxicology screen for Person D indicated the presence of benzodiazepine, which he alleged was administered without his knowledge or permission. Investigators were also contacted by the friends with whom Morgenstern had stayed during the execution of the search warrant. The friends turned over a gym bag with some of Morgenstern's personal effects which had been left at their home, including a number of prescriptions. They also directed investigators to their garage, in which an iPhone and iPad belonging to Morgenstern were found. The investigators were also told that the husband gave Morgenstern a ride to the Stevens County Courthouse, during which time Morgenstern instructed him to stop at an apartment complex dumpster. Morgenstern then broke a laptop computer and dispose of it in the dumpster.

Additional warrants were obtained for Morgenstern's primary residence and a second home occupied by his mother. Numerous computers, peripherals, and cameras were seized. Forensic examination of this property resulted in the discovery of numerous depictions of child pornography, including specific photos and videos related to Persons A, B, C, D, E, and F. Morgenstern was arrested and charged as outlined above.

**Summary of the Argument**

The events alleged in this case occurred in a variety of different federal districts. The government selected the Eastern District of Washington as the district in which to charge events that transpired in other districts, relying on the theory that each and every count charged was a continuing offense. Instructions on the issue gave no guidance to the jury regarding the finding of proper venue.

The evidence was physically presented as Child Pornography and simultaneously presented as proof of Aggravated Sexual Assault. The conduct depicted, meeting the requirements for Production of Child Pornography, did not automatically meet the requirements for Aggravated Sexual Assault. The presentation of evidence, as well as the final jury instructions, gave no indication the standards of proof are different. Venue was improperly addressed as well.

The right to a fair trial was impeded by statutory provisions undermining the presumption of innocence by an impartial jury. The jury in turn failed to uphold its obligation to hold the government to its burden as shown by a sleeping juror and a passing glance at the case during deliberation and returning a verdict.

**Argument**

**A. Evidentiary Issues**

    **1. Sexual Act vs. Sexually Explicit Conduct**

The challenge of this case is the fact that the evidence to support charges of production is used concurrently to prove aggravated sexual assault of a child, even though the specific conduct necessary to convict is different. By blending these two definitions the jury was not only permitted, but encouraged to find the defendant guilty of Aggravated Sexual Assault based on a lower standard than required under the statute.

"Sexually explicit conduct" includes sexual intercourse (including oral copulation), masturbation, or lascivious exhibition of the genitals or pubic area. **18 U.S.C. §§ 2256 (2)(A)(i, iii and v)**. The term "sexual act" means specific contact between the perpetrator and another person, and intentional touching of the genitalia, not through clothing. **18 U.S.C. §§ 2246 (2)(A-D)**. So, while all "sexual acts" involving the defendant would by definition be "sexually explicit conduct," not all "sexually explicit conduct" rises to the level of a "sexual act." The extent of this challenge is evidenced by the Judge referring to an attempt to do so as "legal wordplay." (ER Vol. 3, pp. 586-588)

An example of this occurs in Count 8, wherein the genitals or pubic area of the subject in the photograph are exhibited. While this exemplar meets the burden to establish sexually explicit conduct, without some indicia of contact with the genitals, it fails to meet the definition of "sexual act." This is a recurring pattern throughout the presentation of the case.

## 2. Evidentiary Presentation

Morgenstern asserts there was insufficient evidence provided to convict on Counts 1, 2, 4, 6, 8, 11, 13, 15, 18 and 32. After a jury verdict of conviction, the Court must review the evidence in the light most favorable to the government. **United States v. Yossunthorn**, 167 F.3d 1267, 1270 (9th Cir. 1999).

The case is presented in couplets; each count of Aggravated Sexual Assault of a Child is supported by specific photographs or videos used to prove a corresponding count of Production of Child Pornography.[2] By doing so, without further consideration of the nature of the conduct depicted, the impression is given that the depictions are sufficient to convict on the Aggravated Sexual Assault charge as well as Production. The entire process was set up to expedite the finding of guilt on each count of Aggravated Sexual Assault.

Exhibits 213.1-213.4 were used to prove Count 1. During direct examination, the government's witness was permitted to describe the contents of

---

[2] Count 1 is supported by Counts 2 and 3.

the exhibits and, over objection, permitted to comment on specific elements related to sedation. (ER Vol. 2, p. 323)  From that point on the emphasis of the court was to move through the photographs as quickly as possible. (ER Vol. 2, pp. 330-332) There was also confusion created when the court interjected that having viewed the government's initial video that the still photos would simply be redundant. (ER Vol. 2, p. 330)

The problem with this rational is that the jurors were not watching the first video presented by the government. (ER Vol. 1, pp. 245-246) The problem is worsened by the instructions presented to the jury, again grouping similar counts instead of providing individual instructions for each. (ER Vol. 1, pp. 011-020) It also appears that the jury failed to review any of the exhibits in this case once they retired.

With the volume of exhibits introduced and the specific requirements of the elements and examination of the all the evidence in this case could not have been conducted in a mere 90 minutes of deliberation. (ER Vol. 1, pp. 247-249; Vol 2, pp. 306-307, 480-487) The grouping of counts and generalizations regarding the exhibits expedited conviction instead of holding the government to its burden.

### 3. Incapacitation

At the Close of the Government's Case in Chief the defendant moved for dismissal of three counts under Fed.R.Crim.Pro. 29, specifically Counts 1, 8, and

18. (ER Vol. 3, pp. 560-565) The trial court's findings of fact with regard to a motion to dismiss are reviewed for clear error. **United States v. Camacho-Lopez**, 450 F.3d 928, 929 (9th Cir. 2006).

These specific counts were charged under 18 U.S.C. § 2241(c) and require proof of sedation of the victim. **18 U.S.C. § 2241(b)(2)(A).** To prove this element on some of the counts the government provided the testimony of an expert. The expert reviewed samples of videos and gave an opinion about sedation on them.

The evidence presented at trial was non-existent to support this element on Count 1 as the topic was not addressed in testimony. Count 8 was supported by a single photograph and no conclusion was reached by the expert. Finally, in Count 18 the testimony of Person D was that none of the children were administered any type of pill and that his personal experience on that date was not the same as the experience he had in October 2014.

The Court, however, determined that the testimony of Person A that he had no recollection of the event was sufficient to prove sedation: no recollection, ergo sedation. (ER Vol. 3, pp. 567-568) The burden of proof of each element is beyond a reasonable doubt. When an expert witness, provided to help the jury understand complicated medical issues, is unable to determine if a person is sedated then that element has not been proved beyond a reasonable doubt. It was error to leave these

counts for determination by the jury when, even in the light most favorable to the government, there is no evidence for the jury to consider.

## B. Sixth Amendment Issues

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." **U.S. Constitution, Amend. VI.**

### 1. Impartial jury

#### a. <u>Witnesses not excluded</u>

A defendant's Sixth Amendment right to an impartial jury, as well as a constitutional presumption of innocence, requires that there be no extraneous, prejudicial influences on the jury during the trial. **Deck v. Missouri**, 544 U.S. 622 (2005); **Holbrook v. Flynn**, 475 U.S. 560 (1986)

Upon request of a party, witnesses shall be ordered excluded so they cannot hear the testimony of other witnesses. Fed.R.Evid. 615. The purpose of this rule is to prevent witnesses from tailoring their testimony to that of other witnesses.

**United States v. Brooks**, 715 F.3d. 1069, 1080 (8th Cir. 2013). An exemption to this rule applies for witnesses authorized by statute to be present. Fed.R.Evid. 615 (d). The applicable statute in this matter is 18 U.S.C. §§ 3510 (a) & (c).

This issue was raised by the defendant prior to the trial. (ER Vol. 1, pp 235-236). The exact problem of undue influence on the jury by the presence of family members who also testified was brought up again in the motion for new trial. (ER Vol. 3, pp. 570-571). The victim rights statute unconstitutionally erases the presumption of innocence for an accused. It changes the function of the jury from being convinced by evidence that the government has proved their case to advocates for the alleged victims. Catharsis for the victim becomes the focus of the process, not the protection of a constitutional right to a fair trial.

### b. <u>Sleeping juror</u>

A motion for new trial was filed in this matter based in part on an assertion that one of the jurors was asleep during testimony. (ER Vol. 3, pp. 570-583) The specific issue was not raised during the trial, therefore the standard of review is that of plain error. Fed.R.Crim.P. 52(b). The court of appeals has the authority to reverse a conviction under Federal Rule of Criminal Procedure 52(b) when (1) there was an error, (2) the error was plain, and (3) the error affected a defendant's substantial rights. **United States v. Olano**, 507 U.S. 725, 113 S.Ct. 1770, 1776-79, 123 L.Ed.2d 508 (1993).

Morgenstern's rights were substantially affected as the juror in question was not attending to the testimony of the government's expert witness and his opinion whether the videos the witness had reviewed indicated the children were actually incapacitated, an essential element in a number of the counts. Without considering the testimony of this witness, the juror would arguably have to find the children were NOT sedated or incapacitated, as he would have had no evidence to the contrary. As such, these actions did seriously affect Morgenstern's rights.

### c. **Deliberation**

At the end of the case the jury deliberated for approximately 90 minutes before informing the court of the verdicts. During the trial the government introduced nearly 300 exhibits. The simple act of reviewing the exhibits would have taken longer than 2 hours. The fundamental problem, the error, here is again verbalized by the Court, referring to the amount of time taken sufficient as the evidence was "overwhelming" and there was no defense. (ER Vol. 3, p. 576) As outlined previously in this brief (A.1. Sexual Act vs. Sexually Explicit Conduct), the counts did not simply overlap each other. An actual consideration of the evidence would be necessary to determine whether the conduct depicted in the pornography actually rises to the level required for conviction on the charges of Aggravated Sexual Assault. It is implausible that such an examination was conducted on a dozen different counts in less than 2 hours.

## 2. State and District wherein the crime shall have been committed

### a. Continuing Offense v. Committed Offense

Elements of a crime are outlined in statutes. When the elements are met the crime is completed. Venue is not just a question of where a crime occurred, but also when a defendant can be convicted of the offense without "an implicit finding that the acts used to establish venue have been proven." **United States v. Miller**, 111 F.3d 747, 751 (10th Cir. 1997)(quoting **United States v. Moeckly**, 769 F.2d 453, 461 (8th Cir. 1986)). The government cannot "extend" the completion of a crime for the sake of determining the venue for prosecution.

The instructions on eight counts of Aggravated Sexual Assault indicate the jurors must find that on a certain date, "in the Eastern District of Washington and elsewhere," a sexual act occurred. (ER Vol. 1, p. 14) In none of the counts outlined was there ever an allegation or any evidence to show that a sexual act occurred in the Eastern District of Washington. The government's theory of venue was that every act was a continuing offense because Morgenstern lives in Washington and returned to Washington after the commission of each offense.

The only connection with the Eastern District of Washington is Morgenstern. The evidence in this case was insufficient to prove venue. *See* **United States v. Lukashov**, 694 F.3d 1107, 1113 (9th Cir. 2012) (where the instruction indicated the offense "began, continued or was completed" within the

district). That case indicated the offense was completed when the victim was returned to her home district. Here the victims either never left Mississippi or returned to Mississippi from Tennessee.

### b. Formulating Intent

Testimony in this case showed that Morgenstern was employed in both the State of Washington and the State of Mississippi. (ER Vol. 2, pp. 469-479) Each trip to Mississippi lasted over two weeks and travel to Mississippi stopped once Morgenstern terminated his employment there. He also arranged for transport of Person A to Washington from Mississippi on two occasions, each lasting more than two weeks.

While a person may have different purposes or motives for travel, the government must prove beyond a reasonable doubt that "a dominant, significant, or motivating purpose" for travel was to engage in a sexual act, not just incidental to the travel. **Lukashov**, 694 F.3d at 118. Clearly, based on the fact that Morgenstern was employed in Mississippi and required to travel to work, and did so for weeks at a time, indicates the motivating purpose of the travel is employment. Any sexual act that occurred during those times would be reasonably seen as "incidental."

Testimony at trial also shows that Morgenstern's travel to Idaho was coordinated with the parents of the minors and directed towards an amusement park. (ER Vol. 3, pp. 533-534) The evidence does not support a finding that

engaging in a sexual act was a dominant, significant or motivational basis for that travel. It rather shows a planned event that was incidentally located in Idaho. The same is true for the Transportation of Minor allegations, where the testimony indicated the minor spent an extended period of time in Washington and spent time on activities away from Morgenstern. (ER Vol. 3, pp. 510-527)

## C.  Cumulative Error

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that the conviction must be overturned. **Alcala v. Woodford**, 334 F.3d 862, 893-95 (9th Cir. 2003) reversing conviction where multiple constitutional errors hindered the defendant's efforts to challenge every important element of proof offered by the prosecution.

Similar to our immediate case is one in which reversal was granted because of inappropriate testimony by government witnesses suggesting the possibility of accusations by other children against the defendant and confusion regarding the whether the events took place on an Indian Reservation. **United States v. Frederick**, 78 F.3d 1370, 1381 (9th Cir. 1996). The cumulative errors in Morgenstern's case are more than sufficient to require reversal if the individual issues presented are deemed to be "harmless" enough to let the verdicts stand.

**Conclusion**

Craig Morgenstern's right to a fair trial by an impartial jury was significantly affected by the procedures used to prosecute the case. Grouping charges together, presenting evidence to show two separate counts when the elements of each count is different, and improprieties involving the jury all combined to relive the government of its burden of proof and streamline the conviction process.

Counts relying on actions and actions that took place outside the State of Washington should be dismissed for improper venue. The counts in which the element of intent to travel across state lines should be dismissed for insufficient evidence and in accordance with case law. The balance of the charges should be remanded to the district court for a new trial.

RESPECTFULLY SUBMITTED this 30th day of November, 2016

S/ Bryan P. Whitaker

Attorney for Appellant

**Certificate of Compliance**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)because this brief contains 4,780 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)and the type style requirements of Fed. R. App. P. 32(a)(6) because: his brief has been prepared in a proportionally spaced typeface using Microsoft Word: *Times New Roman, 14 Font*

Signature: s/ Bryan P. Whitaker

Attorney for Appellant

Date: November 30, 2016

**Statement of Related Cases**

The Appellant knows of no cases related to this pending in this Court.

Signature: s/ Bryan P. Whitaker

Attorney for Appellant

Date: November 30, 2016

## CERTIFICATE OF SERVICE

I, Bryan P. Whitaker, certify that a true and correct copy of the foregoing –

BRIEF OF APPELLANT

- was sent via CM/ECF and/or mailed postage prepaid with the United States Postal Service to the following parties:

Assistant United States Attorney

Stephanie Lister – USAEDAW.SLister@usdoj.gov
James Goeke – USAEDAW.JGoeke@usdoj.gov

Craig Morgenstern
Reg. No. 17551-085
United States Penitentiary Tucson
PO Box 24550
Tucson, Arizona 85734

Dated this 30th day of November, 2016

S/ Bryan P. Whitaker
Bryan P. Whitaker
815 W. 7th Ave., Suite 303
Spokane, WA 99204
(509) 315-9947