No. 16-30177
U.S.D.C. 14-CR-00161-WFN

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CRAIG ALLEN MORGENSTERN,

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Washington

APPELLEE ANSWERING BRIEF

MICHAEL C. ORMSBY
United States Attorney

Stephanie J. Lister
James A. Goeke
Assistant U.S. Attorneys
340 United States Courthouse
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................*iv*

I.   STATEMENT OF JURISDICTION ............................................................. 1

    A.   JURISDICTION OF THE DISTRICT COURT ................................. 1

    B.   JURISDICTION OF THE COURT OF APPEALS ........................... 1

    C.   TIMELINESS OF APPEAL ................................................................ 1

    D.   CUSTODY STATUS .......................................................................... 1

II.   ISSUES PRESENTED .................................................................................. 2

III.   STATEMENT OF THE CASE ...................................................................... 2

    A.   NATURE OF THE CASE .................................................................. 2

    B.   COURSE OF PROCEEDINGS AND DISPOSITION IN THE
           COURT BELOW ................................................................................ 3

IV.   STATEMENT OF FACTS ............................................................................ 5

V.   SUMMARY OF ARGUMENT .................................................................... 13

VI.   ARGUMENT ............................................................................................... 15

    A.   THE UNITED STATES PRESENTED OVERWHELMING
           PHOTOGRAPHIC AND VIDEO EVIDENCE DEFENDANT
           COMMITTED SEXUAL ACTS SUFFICIENT TO PROVE
           AGGRAVATED SEXUAL ABUSE OF A CHILD. .......................... 15

        1. Standard of Review ...................................................................... 16

        2. Evidence of Production of Child Pornography Also
            Proved Aggravated Sexual Abuse of a Child. ............................. 17

i

B.   SUFFICIENT EVIDENCE OF SEDATION PROVED
     AGGRAVATED SEXUAL ABUSE OF A CHILD. ........................24

     1. Standard of Review........................................................24

     2. The United States Introduced Ample Evidence that Defendant
        Sedated the Minor Victims at Issue in Counts 1, 4, 6, 8, 10,
        12, 14, and 18. ...............................................................25

C.   THE JURY INSTRUCTIONS PROPERLY DEFINED VENUE. ...27

     1.   Standard of Review……………….……………………….28

     2.   The Jury Instructions Properly Defined Venue for the
          Crimes of Aggravated Sexual Abuse of a Child. ......................29

     3.   The Dominant, Significant, or Motivating Purpose for
          Traveling Across State Lines was to Engage in an Illegal
          Act. ...........................................................................33

D.   ALLOWING THE PARENTS OF THE VICTIMS, WHO WERE
     ALSO WITNESSES, TO ATTEND THE TRIAL DID NOT
     DEPRIVE THE DEFENDANT OF A FAIR TRIAL. ........................37

     1.   Standard of Review……………….……………………….37

     2.   Defendant has not established by clear and convincing
          evidence that the victim-witnesses' testimony was
          "materially altered" by allowing them to attend the trial
          in its entirety............................................................37

E.   NO JUROR MISCONDUCT OCCURRED ......................................40

     1.   Standard of Review……………….…..……………….41

2. After an Evidentiary Hearing, the District Court Determined There was Not Any Juror Misconduct. ....................................42

VII. CONCLUSION ……………………………………………....…..46

STATEMENT OF RELATED CASES…………………………………………...47

CERTIFICATE OF SERVICE…………………… ………………….…………48

BRIEF FORMAT CERTIFICATION………………………………………… 49

iii

# TABLE OF AUTHORITIES

## Supreme Court Cases

*Brecht v. Abrahamson*,
  507 U.S 619 (1998) ................................................................................44

*Estes v. Texas*,
  381 U.S. 532 (1965) ..............................................................................44

*Jackson v. Virginia*,
  443 U.S. 307 (1979) ................................................................. 16, 25, 36

*Tanner v. United States*,
  483 U.S. 107 (1987) ..............................................................................43

*United States v. Johnson*,
  323 U.S. 273 (1944) ..............................................................................30

*United States v. Rodriguez–Moreno*,
  526 U.S. 275 (1999) ........................................................................ 29, 30

## Circuit Court Cases

*In re Mikhel*,
  453 F.3d 1137 (9th Cir. 2006) ...................................................... 39, 40

*United States v. Arango*,
  670 F.3d 988 (9th Cir. 2012) .................................................................28

*United States v. Bennett*,
  621 F.3d 1131 (9th Cir. 2010) ...................................................... 16, 24

*United States v. Brackeen*,
  969 F.2d 827 (9th Cir. 1992) ...............................................................35

*United States v. Charles,*
  456 F.3d 249 (1st Cir. 2006)................................................................39

*United States v. Cherer*,
  513 F.3d 1150 (9th Cir. 2008) ............................................................28

*United States v. Cryar*,
  232 F.3d 1318 (10th Cir. 2000) ..........................................................36

*United States v. Ellis*,
  935 F.2d 385 (1st Cir. 1991)................................................................35

*United States v. Fox*,
  425 F.2d 996 (9th Cir.1970) ................................................................34

*United States v. Frega*,
  179 F.3d 793 (9th Cir. 1999) ..............................................................28

*United States v. Green*,
  554 F.2d 372 (9th Cir. 1977) ..............................................................35

*United States v. Haywar*d,
  359 F.3d 631 (3d Cir. 2004) ...............................................................35

*United States v. Hendrix*,
  549 F.2d 1225 (9th Cir. 1997) ............................................................45

*United States v. Hofus*,
  598 F.3d 1171 (9th Cir. 2010) ............................................................28

*United States v. Johnson,*
  *132 F.*3d 1279 (9th Cir. 1997) ............................................................29

*United States v. Kaplan*,
554 F.2d 958 (9th Cir. 1977) ................................................................31

*United States v. Kinslow*,
860 F.2d 963 (9th Cir. 1988) ................................................................35

*United States v. Long*,
301 F.3d 1095 (9th Cir. 2002) ...............................................................41

*United States v. Lopez*,
484 F.3d 1186 (9th Cir. 2007) ...............................................................30

*United States v. Lukashov*,
694 F.3d 1107 (9th Cir. 2012) ............................................... 31, 32, 34

*United States v. Martinez-Martinez*,
369 F.3d 1076 (9th Cir. 2004) ...............................................................41

*United States v. Olano*,
62 F.3d 1180 (9th Cir. 1995) ................................................................43

*United States v. Pace*,
314 F.3d 344 (9th Cir. 2002) ................................................................29

*United States v. Romo-Romo*,
246 F.3d 1272 (9th Cir. 2001) ...............................................................28

*United States v. Rosenthal*,
454 F.3d 943 (9th Cir. 2006) ................................................................41

*United States v. Seschillie*,
310 F.3d 1208 (9th Cir. 2002) ...............................................................37

*United States v. Simtob*,
    485 F.3d 1058 (9th Cir. 2007) ..............................................................41

*United States v. Springfield*,
    829 F.2d 860 (9th Cir. 1987) ...............................................................44

*United States v. Stinson*,
    647 F.3d 1196 (9th Cir. 2011) ...................................................... 28, 30

*United States v. Sullivan*,
    522 F.3d 967 (9th Cir. 2008) ........................................................ 16, 24

*United States v. Tierney*,
    947 F.2d 854 (8th Cir. 1991) ...............................................................44

*United States v. Vallejo*,
    237 F.3d 1008 (9th Cir. 2001) .............................................................28

*United States v. Vang,*
    128 F.3d 1065 (7th Cir. 1997) .............................................................35

**District Court Cases**

*United States v. Johnson*,
    362 F.Supp.2d 1043 (N.D. Iowa 2006) ...............................................40

**Statutes**

18 U.S.C. § 2241(c) ........................................................................... passim

18 U.S.C. § 2246................................................................................ 17, 21

18 U.S.C. § 2251(a) ....................................................................... 3, 4, 21

18 U.S.C. § 2252A(a)..............................................................................3-5

18 U.S.C. § 2423 ...........................................................................3, 4, 33-35

18 U.S.C. § 3231 .....................................................................................1

18 U.S.C. § 3237(a) ...............................................................................30

18 U.S.C. § 3742 .....................................................................................1

18 U.S.C. § 3771 ...............................................................................38-40

28 U.S.C. § 1291 .....................................................................................1

## Other Authorities

Federal Rules of Appelate Procedure, Rule 32(a)(1)-(7)........................................49

Federal Rules of Appelate Procedure, Rule 4(b) ......................................................1

Federal Rules of Criminal Procedure, Rule 52(b) ..................................................42

# I.     STATEMENT OF JURISDICTION

A.     JURISDICTION OF THE DISTRICT COURT

Jurisdiction existed in the district court by virtue of 18 U.S.C. § 3231.

B.     JURISDICTION OF THE COURT OF APPEALS

Jurisdiction exits in the Court of Appeals by virtue of 18 U.S.C. § 3742 and

28 U.S.C. § 1291.

C.     TIMELINESS OF APPEAL

This appeal is timely pursuant to Fed. R. App. P. 4(b).  Defendant was

sentenced on July 25, 2016.  ECF 159; ER 3-10.[1]  Defendant's Notice of Appeal

was filed on August 1, 2016, that being within 14 days after entry of the final

judgment.  ECF 63; ER 1-2.

D.     DEFENDANT'S CUSTODY STATUS

Defendant is currently in the custody of the Bureau of Prisons, serving a

life sentence at United States Penitentiary Tucson in Tucson, Arizona.

---

[1] "ECF" denotes the Electronic Case Filing Docket entry for *United States v. Craig Allen Morgenstern,* U.S.D.C. 14-CR-00161-WFN.  "ER" denotes the Appellant/Defendant's Excerpts of Record.

## II.    ISSUES PRESENTED

1.    Whether there was sufficient evidence of Defendant's commission of a
"sexual act" to uphold each of Defendant's 12 convictions for Aggravated
Sexual Abuse of a Child?

2.    Whether there was sufficient evidence of Defendant's incapacitation of the
victims in eight of Defendant's convictions for Aggravated Sexual Abuse
of Child?

3.    Whether the jury instructions properly defined "venue" for each of
Defendant's 12 convictions for Aggravated Sexual Abuse of a Child?

4.    Whether allowing the parents of the victims, who were also witnesses, to
attend the trial deprived Defendant of a fair trial?

5.    Whether, after conducting an evidentiary hearing, the district court
properly found no jury misconduct occurred?

## III.    STATEMENT OF THE CASE

### A.    NATURE OF THE CASE

This is a criminal case in which Defendant, Craig Allen Morgenstern, was
convicted after a jury trial of numerous counts relating to his criminal conduct:

- Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C.
  § 2241(c) (Counts 1, 4, 6, 8, 10, 12, 14, 18, 20, 22, 24, 30);

2

- Production or Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31-33);

- Transportation with Intent to Engage in Sexual Contact with a Child, in violation of 18 U.S.C. § 2423(a) (Counts 26, 28);

- Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count 34); and,

- Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 35).

ER 3-10.  The district court sentenced Defendant to numerous life sentences as well as other statutory maximum sentences for each count of conviction.

Defendant now appeals his convictions.

B.    COURSE OF PROCEEDINGS AND DISPOSITION BELOW

On October 23, 2014, Defendant was arrested on a federal arrest warrant in Colville, Washington for Interstate Transportation of a Minor for Aggravated Sexual Abuse and Production of Child Pornography.  ECF 1-4.

On November 4, 2014, the Grand Jury for the Eastern District of Washington returned an Indictment charging Defendant with nine counts related to the sexual exploitation of children.  ECF 16.  On April 7, 2015, the Grand Jury returned a Superseding Indictment charging Defendant with 36 counts related to the sexual exploitation of children.  ECF 36.  On December 1, 2015, the Grand Jury returned a Second Superseding Indictment again charging Defendant with

the same 36 counts as charged in the Superseding Indictment, but modifying

some dates and locations.  ECF 68.  Finally, on January 5, 2016, the Grand Jury

returned a Third Superseding Indictment, the last indictment.  ECF 80; ER 65-83.

The Third Superseding Indictment charged Defendant with 35 Counts

alleging:  Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. §

2241(c) (Counts 1, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 30) [2]; Production or

Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a)

(Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31-33; Transportation

with Intent to Engage in Sexual Contact with a Child, in violation of 18 U.S.C. §

2423(a) (Counts 26, 28); Receipt of Child Pornography, in violation of 18 U.S.C.

---

[2] Upon Motion of the Government prior to trial, Count 16 was dismissed by the

District Court.  ECF 102, 106.  The Aggravated Sexual Abuse of a Child Counts

of 1, 4, 6, 8, 10, 12, 14, and 18, were based on evidence Defendant had

drugged/incapacitated a minor who was at least 12 years of age, but under 16

years of age, the remaining Aggravated Sexual Abuse Counts were based on

evidence Defendant abused a minor under the age of 12 years at the time of the

abuse (Counts 20, 22, 24, and 30).  ER 14-16.

§ 2252A(a)(2) (Count 34); and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 35). *Id.*

On February 22, 1016, the jury trial commenced. ECF 113. On the sixth day of trial, March 1, 2016, the jury reached a guilty verdict on all 34 Counts submitted for verdict. ECF 127-128.

On July 25, 2016, the district court sentenced Defendant to a total term of life imprisonment on Counts 1, 4, 6, 8, 10, 12, 14, 18, 20, 22, 24, and 30; thirty years each on Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, and 31-33; and twenty years each on Counts 26, 28 and 34. ER 3-10. The district court further ordered all sentences to be served concurrent to one another. *Id.* Since Defendant was convicted and sentenced on Count 34 of the Third Superseding Indictment, which charged him with Receipt of Child Pornography, the district court dismissed Count 35 of the Third Superseding Indictment that charged Defendant with Possession of Child Pornography. *Id.*

## IV.   STATEMENT OF FACTS

Trial began on February 22, 2016 and the United States rested its case on February 29, 2016. ECF 113, 125. The United States' case-in-chief lasted five trial days spanning two business weeks. Approximately thirty-three (33) witnesses testified and over 250 exhibits were admitted. ECF 127-1, 127-2. The

United States' witnesses included law enforcement investigators, fact witnesses, two victim witnesses (Person A and Person D), two parents of victims (a parent of Person D and a parent of Persons B, C, and E). *Id.* The physical exhibits included numerous hard drives with organized and curated child pornography created by Defendant depicting numerous sexual acts committed against the victims by Defendant, as well as benzodiazepine in various forms from Defendant's residence and elsewhere, and photographs from Defendant's residence depicting various pieces of camera equipment and hard drives missing from Defendant's home between the time his residence was photographed shortly after his last sexual assault was reported and when search warrants were served at is residence shortly thereafter. *Id.*

During trial, the United States introduced evidence that from at least 2008 until October of 2014, Defendant, Craig Allen Morgenstern, engaged in an extraordinary pattern of sexual abuse of six young boys and committed numerous acts of abusive, exploitative and predatory conduct against his victims. ER 284-305, 321-458 (testimony of Federal Bureau of Investigation Special Agent Leland McEuen detailing his investigation of video images and still images that support each production count with frequent descriptions of sexual acts in the form of Defendant's masturbation and oral copulation present on specific video clips and

specific still images submitted as evidence). After drugging his victims to render them unconscious so that his abuse would go undetected, Defendant systematically touched, masturbated and sexually exploited the six young boys identified at trial as Persons A, B, C, D, E, and F all the while creating over a thousand still and video images of his systematic exploitation of the minor victims. *Id.* In no video or still photograph offered as evidence in support of the Aggravated Sexual Abuse Counts (Counts 1, 4, 6, 8, 10, 12, 14, 18, 20, 22, 24, 30) are the victims described as a wake or conscious. *Id.* Moreover, the disturbing photographic images and video images of child pornography Defendant created and that were introduced at trial included many clear and unmistakable images of Defendant intentionally using his mouth to have oral to genital contact with the minors' penises, and/or using his hand to masturbate the minors' penises, all with the intent to arouse and gratify his depraved sexual desires and all while the victims appear completely unaware of Defendant's actions. *Id.*

Defendant committed these acts of sexual abuse and depravity at his residence in the Eastern District of Washington (specifically in Stevens County) and also regularly traveled from his Washington residence to Mississippi, Tennessee, and Idaho to commit and document additional acts of sexual abuse.

7

ER 284-305, 321-458 (testimony of Special Agent McEuen), 491-526 (testimony

of Person A detailing trips to/from Mississippi and Tennessee), ECF 185 at 888-

889 (testimony from Victim D's parent that defendant took his son to Idaho),

ECF 185 at 911-912 (testimony from Victim D that he and Victims B, C, E were

driven by Defendant to Idaho). Since at least 2008, Defendant managed to create,

collect and possess over 1 million (1,000,000) child pornography images, both

created by Defendant and collected from the Internet, that he meticulously

maintained and catalogued on computer hard drives and other media he

maintained at his residence in the Eastern District of Washington until he drew

the attention of law enforcement. ER 440.

The jury learned how Defendant's crimes were discovered when Person D,

a minor child less than 14 years old at the time, escaped from Defendant's

residence in Stevens County, near Spokane, Washington, in the Eastern District

of Washington on October 18, 2014 after the Defendant sexually assaulted him

during the early morning hours. ER 539-556 (testimony of Person D regarding

sexual assault at Defendant's residence). On October 17, 2014, the Defendant

picked up Person D from his middle school for a sleepover at the Defendant's

residence. ER 541. Person D expected the evening would be spent watching

movies and playing with various games and toys Defendant had at his residence,

as Person D had done on several occasions in the past. ER 541-549. Defendant, on the other hand, planned to drug Person D such that he would be incapacitated allowing Defendant to commit sex acts with Person D, all the while documenting the abuse through still and video child pornography images. ER 549-556, ECF 179 at 84 (benzodiazepines found during the first search of Defendant's house).

After an evening watching movies, playing various games, and playing with various toys, as well as viewing various firearms Defendant maintained in his bedroom, Defendant during the late evening/early morning of October 17-18, 2014 surreptitiously provided Person D with a sedative (or sedative "cocktail"), likely through hot cocoa, as determined later through toxicology tests of Person D's urine, to consist of benzodiazepines. ER 546-547 (testimony from Person D regarding odd tasting hot cocoa with a film on it provided by Defendant); ECF at 317-321 (testimony from forensic scientist regarding benzodiazepines in Person D's urine). The sedative, however, did not fully sedate Person D such that rather than being knocked out, Person D instead recalled in vivid detail that Defendant, after providing Person D with the sedative and believing it had incapacitated Person D, moved Person D to the Defendant's bedroom, placed Person D on a small makeshift bed next to the Defendant's bed, and then masturbated and orally copulated Person D. ER 548-554. During the sexual assault, Person D feared for

his life and pretended to be asleep. ER 553-554. Person D also recalled lights and the clicking of cameras during the sexual assault. ER 550-554.

Ultimately, Person D testified that he pretended to wakeup whereupon Defendant hastily retreated to a bathroom. ER 555-556. Person D then grabbed his mobile phone and fled the Defendant's residence at approximately 2:30 a.m. on October 18, 2014. ER 556. Once outside the Defendant's residence, Person D called 911 and ran to a nearby house. *Id.*

Responding Sheriff's Deputies testified that Defendant then consented to a walkthrough of his house and consented to the deputies taking pictures of the interior of his house during the early morning of October 18, 2014. ECF 179 at 46, 75. Defendant was not arrested that morning. While over the next several days, various search warrants were obtained for Defendant's residence in Stevens County, another prior residence in Colbert, Washington, as well as other locations, Defendant had already began hiding and destroying evidence consisting of numerous hard drives full of child pornography and camera equipment from the time Person D escaped the Defendant's house up until his arrest on federal charges on October 24, 2014. ECF 183 at 418-420 (testimony regarding discovery of computer equipment and digital storage items in dumpster). Accordingly, search warrants were ultimately secured for some electronic devices

found at Defendant's Stevens County residence and other locations as well as for electronic devices and photographic equipment abandoned by Defendant at various locations around Spokane (such as in a dumpster) in his ultimately futile attempt to destroy the extensive photographic evidence documenting his crimes. ER 284-305, 321-458 (Special Agent McEuen's testimony discussing items discarded by Defendant that later were determined to have images of child pornography supportive of nearly all Counts in the Superseding Indictment).

The jury heard from Special Agent McEuen that all told, approximately one million images of child pornography were received by Defendant and found on numerous electronic devices, including from computer hard drives and other electronic memory devices found at the Defendant's residence, as well as on numerous other hard drives and electronic devices Defendant attempted to throw away. ER 440. Among these video and still images of child pornography were numerous visual images of the Defendant engaging in sexual acts in the form of oral copulation and masturbation with other minor children, later identified as Persons A, B, C. D, E, and F, as well as numerous other images of child pornography Defendant obtained from the Internet. ER 284-305, 321-458

Special Agent McEuen further testified that he identified Persons A, B, C, E and F as additional minor victims of the Defendant and established Defendant

traveled outside the Eastern District of Washington to engage in sexual acts with
Persons A, B, C, D, E, and F and produced child pornography involving these
victims using materials that had travelled in interstate commerce (such as with
foreign-made cameras recovered from the Defendant's residence and abandoned
by Defendant elsewhere and with foreign-made electronic storage devices). *Id.*
Person A, Person D, a parent of Person A, and a parent of Person D, as well as
travel records and photographic evidence further confirmed Defendant's travel.
Moreover, evidence at trial also established that on the occasions Defendant
produced child pornography outside the Eastern District of Washington,
Defendant moved the child pornography in interstate commerce back to the
Eastern District of Washington, with a final attempt to produce child pornography
occurring on October 18, 2014 involving Person D. ER 284-305, 321-458.
Person A also testified that Defendant caused Person A to travel from Mississippi
to the Eastern District of Washington on two occasions to engage in sexually
explicit conduct. ECF 185 at 862, 857.

The Defendant did not offer a defense case—exercising his right to not
testify and offering no witnesses or other evidence—and rested immediately after
the closing of the Government's case. ECF 125. Closing arguments were held on
February 29, 2016. ECF 125. On the sixth trial day, the jury started deliberations

at 8:30 a.m. and reached a verdict of guilty on all thirty-four counts at approximately 10:33 a.m. that same day.  ECF 127-128.  After the guilty verdicts were rendered, the Defendant filed a Motion for New Trial alleging juror misconduct which was denied by the district court.  ECF 141, ER 11-12.

## V.    SUMMARY OF ARGUMENT

Defendant cannot establish that his convictions for Aggravated Sexual Abuse of a Minor do not rely on evidence of sexual acts.  Defendant repeatedly engaged in sexual acts in the form of oral-genital contact and/or masturbation with his victims after he incapacitated his victims to avoid detection.  Defendant created much of the evidence of these crimes by creating a video and still photo log of his activities, essentially crime scene photos.  As a result, Defendant was convicted of numerous Counts of Aggravated Sexual Abuse of a Child because the evidence proved Defendant had drugged a minor who was at least 12 years of age, but under 16 years of age (Counts of 1, 4, 6, 8, 10, 12, 14, and 18) and some of his victims were under the age of 12 years at the time of the abuse (Counts 20, 22, 24, and 30).  The crime scene images Defendant created while he was sexually assaulting his victims provided the jury with overwhelming evidence of not only multiple incidents of the Production of Child Pornography, but also that

Defendant was guilty of multiple counts of Aggravated Sexual Abuse of a Child, as well as other related offenses.

Defendant also cannot establish that those Counts of Aggravated Sexual Abuse of a Child that require proof of incapacitation lack such proof. Defendant's photographs and videos again establish obvious evidence of incapacitation. Moreover, unrebutted expert testimony from a pediatric anesthesiologist confirmed that the behavior of the minor victims in Defendant's videos and still photographs was consistent with incapacitation. Finally, Defendant's possession of sedative drugs and the presence of sedative drugs in the urine of Defendant's last victim hours after Defendant's sexual assault of that victim confirmed Defendant's modus operandi of sedation, as well as the inability of each victim who testified to recall any prior incident of sexual abuse by Defendant (aside from Defendant's last sexual assault).

Defendant also cannot establish that venue for the Aggravated Sexual Abuse of Child Counts was improper in the Eastern District of Washington. The crime of Aggravated Sexual Abuse of a Child is a continuing offense, thus, the district court properly instructed the jury that venue was proper in the Eastern District of Washington, as Defendant's crimes began, continued and ended in the Eastern District of Washington.

14

Defendant's final claims that the district court erred in allowing the parents of several victims to watch trial even though those same parents testified at trial and that juror misconduct occurred similarly fail. The district court properly allowed the parents of some of the minor victims to view trial consistent with relevant statutes. The district court also held a post-verdict evidentiary hearing that confirmed no juror misconduct had occurred.

## VI.   ARGUMENT

A.   THE UNITED STATES PRESENTED OVERWHELMING PHOTOGRAPHIC AND VIDEO EVIDENCE DEFENDANT COMMITTED SEXUAL ACTS SUFFICIENT TO PROVE AGGRAVATED SEXUAL ABUSE OF A CHILD.

The United States and Defendant agree that each count of Aggravated Sexual Abuse of Child requires the United States to prove Defendant committed sexual acts (which can include oral copulation and masturbation) against the victims identified in each count. Defendant contends, however—without any support in the record— that because the Production of Child Pornography Counts require only lesser proof of "sexually explicit conduct" that can include "sexual acts" but also conduct less than sexual acts, the jury could have ignored the explicit distinctions of proof in the relevant jury instructions and convicted Defendant on the Aggravated Sexual Abuse of Child Counts with proof of less than sexual acts. Docket No. 5 at 11-12. This is pure speculation on Defendant's part with no basis in the record.

15

In this case, the sexual acts which resulted in Defendant's convictions for Aggravated Sexual Abuse of a Child were based on proof beyond a reasonable doubt that Defendant engaged in oral-genital contact with his victims and/or masturbation, in many instances involving children under 12 years of age and/or after Defendant had sedated his victims. While Defendant engaged in sexual acts with his victims he also filmed and photographed his sexual abuse of the victims. Thus, the evidence of the sexual acts Defendant engaged in with the victims, which was the basis of his convictions for Aggravated Sexual Abuse of a Child, was produced and created by the Defendant. The videos and images of child pornography Defendant produced while sexually assaulting his child victims, provided the jury with overwhelming evidence of both Defendants Aggravated Sexual Abuse of Children and his Production of Child Pornography.

1.   Standard of Review.

Claims of insufficient evidence are reviewed *de novo*. *See United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010); *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008). There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard is highly

deferential because our criminal justice system gives primacy to the role of the jury in determining guilt beyond a reasonable doubt after being correctly instructed on the governing law.

      2.    <u>Evidence of Production of Child Pornography Also Proved Aggravated Sexual Abuse of a Child.</u>

In this case, the images and videos of child pornography Defendant created/produced depicted him intentionally using his mouth to have oral to genital contact with the penises of the minors, and/or using his hand to masturbate the minors, all with the intent to arouse or gratify his sexual desires. Many of the images and videos Defendant produced included clear images of his face and provided ample proof beyond a reasonable doubt that Defendant had engaged in a "sexual act" with his victims, pursuant to 18 U.S.C. § 2246(2)(B) (contact between the mouth and the penis) and/or 18 U.S.C. § 2246(2)(D) (intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person).

While the child pornography videos and images Defendant produced of sexual acts also included the lascivious exhibition of the victim's genitals that were photographed by the Defendant, these images were part of a series of images that Defendant took while he was engaged in oral-genital contact with the minors

17

or while he was masturbating the victims. So for example, a single count of production typically involved multiple images in a series, some of the photographs taken when Defendant first started his sexual abuse of a child involve the lascivious exhibit of the genitals, but the evidence as to all the production counts also included images of sex acts, such as oral sex and/or masturbation.

For example, Defendant was charged in Count 1 with Aggravated Assault of a Child in September 2008 and in Count 2 with Production of Child Pornography on September 30, 2008. ECF 80, ER 66-67. Testimony established that pursuant to a search warrant, law enforcement found and seized from Defendant's residence an HP Pavilion computer tower, which contained a Seagate Hard Drive. ECF 180 at 134, 231. A forensic examiner testified that he prepared a report of his examination of the HP Pavilion Seagate Hard Drive, Exhibit 212 (admitted). ECF 180 at 238, 240. Exhibit 212 contained a hundred or so images that were found on the HP Pavilion Seagate Hard Drive, photographs that were taken on September 30, 2008. ECF 180 at 239-241, 246-247. The witness explained that the pictures found on the Defendant's HP Pavilion computer were part of a series of photographs depicting sexual acts performed on the same victim. *Id*. at 248. The images were described by the witness:

18

> It looks like it started with pulling up of the underwear to expose the penis. There was touching of the penis with a hand. It looks like a right hand. There is oral sex.

*Id.* When asked if the molester was shown in the pictures involving oral sex, the witness answered that there were a few pictures with the face. *Id.* Exhibit 212 was admitted in its entirety, however, during trial the jury was only shown page 7 of the exhibit. *Id.* at 240, 248. The witness testified the images on page 7 of Exhibit 212 showed the Defendant performing oral sex on the victim. *Id.* at 249. Thus, the evidence established that Defendant produced images of "sexually explicit conduct" and also that he engaged in "sexual acts" with the minor.

Defendant claims that the "jurors were not watching the first video presented by the government". Docket No. 5 at 13. The record indicates the first video the Government played was Exhibit 217 and defense counsel requested that it "be turned off since the jury had stopped watching". ER Vol 1, pp. 245-246. In response the Government said, "I don't think that the jury has stopped watching a five-minute video" and the court responded "I think they've seen enough unless there's anything different". *Id.* at 246. The Government made a proffer of what was on the remaining video and Exhibit 217 was allowed to continue to play. *Id.* There is no evidence the jury did not watch the video, but the Government recognizes that these images and videos were difficult for the jury to view as they

19

graphically depicted the Defendant engaging in horrific sexual acts with minor children.[3]

After the evidence was concluded, the jury was properly instructed that to prove beyond a reasonable doubt that the Defendant was guilty of Aggravated Sexual Abuse of a Child the Government must prove beyond a reasonable doubt "[t]hat Defendant knowingly engaged in a *sexual act* with a person...." ECF 126 at 9 (Jury Instruction 6—aggravated sexual abuse involving incapacitating a minor over 12 under 16 years of age); ER 14 (same); ECF 126 at 11 (Jury Instruction 7—aggravated sexual abuse of minor child under 12); ER 16 (same); (emphasis added); *See* 18 U.S.C. § 2241(c).

The jury was further instructed that the term "sexual act" means:

---

[3] Throughout the trial, defense counsel objected to how many images were shown to the jury to prove the elements of the case and the district court requested that the United States be conservative in the number of images shown to the jury during trial which the United States abided by. ER 240, 263, 268, 269. After the first long video, Exhibit 217, the United States only played short parts of the videos showing Defendant sexually abusing his victims, typically for only 20 to 30 seconds. ER 270-272.

…contact between the mouth and the penis, or the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

ECF 126 at 9-11 (Jury Instructions 6-7); ER 14-16; *See* 18 U.S.C. § 2246(1)(B) and (D).

The district court instructed the jury that in order for Defendant to be found guilty of Production of Child Pornography, one of the elements the United States must prove beyond a reasonable doubt is that:

the Defendant employed, used, persuaded, induced, or enticed the person to take part in *sexually explicit conduct* for the purpose of producing a visual depiction of that conduct…

ECF 126 at 12 (Jury Instruction 8); ER 17 (emphasis added); *See* 18 U.S.C. 2251(a).

The district court instructed the jury that in order for Defendant to be found guilty of *Attempted* Production of Child Pornography, one of the elements the United States must prove is "that Defendant intended to engage Person D in *sexually explicit conduct* for the purpose of producing a visual depiction of that conduct…."

ECF 126 at 14 (Jury Instruction 9); ER 16 (emphasis added); *See* 18 U.S.C. 2251(a) and (e).

The jury was instructed that the term "sexually explicit conduct" was to mean graphic:

    (1)     sexual intercourse, including *oral-genital*, whether between persons of the same or opposite sex; or

    (2)     *masturbation*; or

    (3)     the lascivious exhibition of the genitals or pubic area of any person.

ECF 126 at 21-22 (Instruction No. 16) (emphasis added).

The jury was instructed that in order to determine whether a picture or image of the genitals or pubic area constitutes a lascivious exhibition:

> ….requires a consideration of the overall content of the material. It is for you to decide the weight or lack of weight to be given to any of the following factors.

> You may consider such factors as: (1) whether the focal point of the picture or image is on the child's genitals or pubic area; (2) whether the setting of the picture or image is sexually suggestive, that is, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the minor; (4) whether the child is fully or partially clothed, or nude; (5) whether the picture or image suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the picture or image is intended or designed to elicit a sexual response in the viewer.

> A picture or image need not involve all of these factors to constitute a lascivious exhibition of the genitals or pubic area, and you may find that the image is a lascivious exhibition of the genitals even if only one or more of the factors is present.

ECF 126 at 21 (Instruction No. 16).

In addition, the jury was instructed the term "child pornography" means:

> …any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of *sexually explicit*

22

*conduct*, where such visual depiction is a digital image, computer image, or computer-generated image *that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct.*

ECF 126 at 21 (Instruction No. 16)(emphasis added).

At the conclusion of the evidence, the jury found Defendant guilty of Aggravated Sexual Abuse of a Child; Counts 1, 4, 6, 8, 10, 12, 14, and 18 related to Defendant drugging a minor who was at least 12 years of age, but under 16 years of age and Counts 20, 22, 24, and 30 based on evidence Defendant abused a minor under the age of 12 years at the time of the abuse.  In addition, the jury found the Defendant guilty of a number of Production of Child Pornography Charges (Counts 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31-32) and Attempted Production of Child Pornography (Count 33).  ER 3-10.

Defendant complains the verdict was swift and that it appears to Defendant the jury failed to review any of the exhibits.  The United States submits that the jury was not required to look at, or review, the sexual abuse images or videos of the minors during deliberations.  Moreover, in all probability, those images were burned into their memory the first time they saw them during trial.  Just because the evidence was overwhelming, and verdict swift, does not establish that the United States's proof was insufficient.

In conclusion, following the instructions properly given by the District Court, and viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes of Aggravated Sexual Abuse of a Child and Production of Child Pornography beyond a reasonable doubt and thus properly convicted the Defendant of those charges.

## B.    SUFFICIENT EVIDENCE OF SEDATION PROVED AGGRAVATED SEXUAL ABUSE OF A CHILD.

Defendant also claims there was insufficient evidence Defendant sedated his victims.  Thus, Defendant claims there was insufficient evidence to convict him of Aggravated Sexual Abuse of a Child (Counts 1, 4, 6, 8, 10, 12, 14, and 18).  Docket No. 5 at 12; *See* ER 14-15.  Ample evidence at trial, however demonstrated that the children that had been drugged and showed that the children were incapacitated throughout the time Defendant engaged in sexual acts with them, despite the length of time Defendant would sexually abuse them and the multiple camera flashes that were depicted in the videos taken while the Defendant was sexually abusing the children.

### 1.    Standard of Review.

Again, claims of insufficient evidence are reviewed *de novo*. *See Bennett*, 621 F.3d at 1135; *Sullivan*, 522 F.3d at 974.  Sufficient evidence to support a conviction exists if, viewing the evidence in the light most favorable to the prosecution, a

rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.  *See Jackson,* 443 U.S. at 319.

> 2.  The United States Introduced Ample Evidence that Defendant Sedated the Minor Victims at Issue in Counts 1, 4, 6, 8, 10, 12, 14, and 18.

First, the United States presented unrebutted testimony from an expert who

reviewed video evidence for corresponding to Production of Child Pornography

Counts 3, 5, 7, 11, 13, 15, and 32 which in turn correspond to Aggravated Sexual

Abuse of a Child Counts 1, 4, 6, 10, 12, and 14 based on the relevant dates of the

offenses, except for Count 32 which is a Production of Child Pornography Count

involving Person D (also with both Counts 3 and 5 of Production of Child

Pornography corresponding to Aggravated Sexual Abuse of a Child Count 4).

ER 271.  The United States' expert was Dr. Thomas Satterfield, a pediatric

anesthesiologist with ample experience sedating children, in particular with drugs in

the family of benzodiazepines.  ER 254-283.

Dr. Satterfield testified that benzodiazepines can cause both sedation and loss

of memory.  ER 254-255 (discussing general sedation); 255-256 (discussing loss of

memory).  Dr. Satterfield further testified that common practices to check whether a

child is sedated after receiving such drugs is to touch the child's chest or cause some

other slight physical stimuli, as well as observing the rate of respiration to see if it is

constant.  ER 268-270.  Dr. Satterfield testified that even if a child is under the

influence of such a drug, the child can still become sexually aroused in response to physical stimuli, even when sedated. ER 270-271. Dr. Satterfield then testified based on the previously mentioned trial exhibits he reviewed, his opinion was that each victim at issue was sedated in the videos he reviewed. ER 271.

In particular, Dr. Satterfield observed that the respiration of the victims did not change despite how they were being sexually stimulated and they did not appear to make any voluntary movement in response to the stimuli. ER 271-272. Dr. Satterfield further observed that Defendant appeared to test levels of sedation by stroking the victims' abdomen and chest and by placing an arm over the victim's chest as a sort of trip wire. Dr. 272-274. Dr. Satterfield further confirmed that during Defendant's sexual manipulation of the victims' genitalia, the victims did not appear to react—consistent with being sedated. ER 275-276.

Second, the United States introduced evidence that Defendant had access to benzodiazepines. The United States introduced benzodiazepines as exhibits from both Defendant's residence and vehicle, as well as testimony from a forensic scientist who found benzodiazepines in Person D's urine following Defendant's sexual assault of Person D on October 18, 2014. ER 317-321 (testimony from a forensic chemist regarding the presence of benzodiazepines in Person D's urine hours after Defendant's sexual assault of Person D on October 14, 2014).

26

Third, the United States introduced evidence from Person D that he felt groggy after accepting a drink made by Defendant shortly before Defendant sexually assaulted him. ER 546-547. Moreover, Person D had no recollection of being sexually assaulted by Defendant previously, even when Defendant had created other images at other times where he had sexually assaulted Person D. ER 536 (Person D's testimony), 271 (Dr. Satterfield's testimony generally noting that the video he observed in relation to Count 32 involved sexual stimulation of the victim by Defendant). Finally, Person A similarly testified that he had no recollection of Defendant sexually molesting him until presented with such information during the investigation of Defendant's crimes. ECF 185 at 7, 23.

The foregoing provides the jury ample evidence that Defendant sedated and otherwise incapacitated his victims. Moreover, this evidence is sufficient to establish a long running modus operandi for Defendant.

## C. THE JURY INSTRUCTIONS PROPERLY DEFINED VENUE.

Defendant claims the instruction on venue "gave no guidance to the jury regarding the finding of proper venue" and that the district court in the Eastern District of Washington did not have venue for his convictions to the eight counts of Aggravated Sexual Assault of a Child. Docket No. 5 at 10, 18. The United States contends the district court properly instructed the jury on venue and that

venue was proper in the Eastern District of Washington as Defendant's crimes began, continued and ended in the Eastern District of Washington.

1. <u>Standard of Review.</u>

In criminal cases, venue is a question of law reviewed *de novo*. *See United States v. Arango*, 670 F.3d 988, 992 (9th Cir.2012); *United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011).

Whether jury instructions omit or misstate elements of a statutory crime is a question of law reviewed *de novo*. *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010; *United States v. Romo-Ro*mo, 246 F.3d 1272, 1274 (9th Cir. 2001). *See also United States v. Cherer*, 513 F.3d 1150, 1155 (9th Cir. 2008) ("[T]he relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation"; *United States v. Vallejo*, 237 F.3d 1008, 1024 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001) (If "the instructions 'fairly and adequately covered the elements of the offense,' we review the instruction's precise formulation for abuse of discretion.'"); *United States v. Frega*, 179 F.3d 793, 807 n.16 (9th Cir. 1999) ("The trial court has substantial latitude so long as its instructions fairly and adequately cover the issues presented).

When a defendant does not object to an instruction the instruction is reviewed only for plain error. *See United States v. Johnson,* 132 F.3d 1279 (9th Cir. 1997). Defendant did not object to the venue instruction.

2.  The Jury Instructions Properly Defined Venue for the Crimes of Aggravated Sexual Abuse of a Child.

In order to prove the crime of Aggravated Sexual Abuse of a Child the United States was required to prove that Defendant crossed a state line with the intent to engage in an illegal act. ECF 126 at 9, 11; ER 14, 16. The district court instructed the jury as to venue:

> The Government must prove it is more likely true than not true that the offenses charged were begun, continued or completed in the Eastern District of Washington. You decide these facts by considering all of the evidence and deciding what evidence is more believable. This is a lower standard than proof beyond a reasonable doubt. The requirement of proof beyond a reasonable doubt applies to all other issues in the case.

Jury Instruction No. 13, ECF 126 at 18.

To decide whether venue is proper in a district, the court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 279 (1999). "To determine the 'nature of the crime,' the court looks to the 'essential conduct elements' of the offense." *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002) (quoting *Rodriguez–Moreno*, 526

29

U.S. at 280. This Court has previously considered the elements of Aggravated Sexual

Abuse of a Child, in violation of 18 U.S.C. § 2241(c), and determined that this

offense is a continuing offense for the purposes of 18 U.S.C. § 3237(a). *Lukashov* at

1121.

>For continuing offenses, 18 U.S.C. § 3237(a) states:

>Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

>Under *Rodriguez–Moreno* and § 3237(a), venue for a continuing offense is

proper if an "essential conduct element" of the offense begins in, continues into, or is

completed in the charging district. 18 U.S.C. § 3237(a); *Rodriguez–More*no, 526

U.S. at 280; *United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir.2011).

>This Court has held previously that a continuing offense "does not terminate

merely because all of the elements are met." *United States v. Lopez*, 484 F.3d 1186,

1192 (9th Cir.2007) (*en banc*). It is committed "over the whole area through which

force propelled by an offender operates." *United States v. Johnson*, 323 U.S. 273,

275 (1944).

>Evidence at trial established that during the time Defendant committed the

crimes charged he lived in Stevens County, in the Eastern District of Washington.

ER 333 (SA McEuen testified about locations of photographs and videos), ER 491-509 (Person A testified about Defendant's travel from the Eastern District of Washington to Mississippi and Tennessee) 532-534 (Person D testified about Defendant taking him alone and with Persons B, C, and E to Idaho); ECF 185 (father of Persons B, C, and E testified Defendant took boys to Idaho in May and November 2010).  Specifically, from his residence in the Eastern District of Washington, Defendant would travel to, or with, his victims to Idaho, Mississippi and Tennessee. In some instances, he had his victim travel from Mississippi to his residence in the Eastern District of Washington.  Before Defendant left the Eastern District of Washington he would take camera equipment and other recording equipment to produce images of child pornography of the minors he sedated, molested and produced sexual explicit images of.  *See United States v. Kaplan*, 554 F.2d 958, 964 (9th Cir.1977) ("An inference of criminal intent can be drawn from circumstantial evidence.").  Defendant's offense of sexual abuse continued.  After he molested his victims and produced images of child pornography he returned with the images to the Eastern District of Washington, where they were found by law enforcement during several search warrants of his home and in a dumpster where Defendant attempted to dispose of the images.  ECF 184 at 609-610, 619, 631, 649, 716.

31

In support of Defendant's venue argument, he cites *United States v. Lukashov*, 694 F.3d 1107, 1113 (9th Cir. 2012). *Lukashov* does not support Defendant's position, to the contrary it supports conviction of the Defendant. In *Lukashov,* a long-haul trucker was convicted of aggravated sexual abuse based on his molestation of an eight-year-old girl who had accompanied him on a cross-county trip that continued through various states in which sexual abuse occurred. This Court held venue was proper through the various states in which the sexual abuse occurred, including the home where the girl was taken from and safely returned to. *Id.* at 1122. This Court, in *Lukashov,* held the federal crime of aggravated sexual abuse, which involves transportation of a child across state lines for purposes of engaging in a sexual act, is a continuing offense, for venue purposes. *Id.* Thus, in *Lukashov* the Court found that the truck driver's continuing offense of aggravated sexual abuse continued until the child reached the safety of her home. *Id.* This Court held venue is proper where the offense "began, continued or was completed" within the district). *Id.*

In the case at bar, the testimony, travel documents and other evidence of indicia established that Defendant lived in the Eastern District of Washington and began his travels from the EDWA. The evidence of Defendant's sexual abuse of his minor victims occurred in Mississippi, Tennessee and Idaho, as was evidenced by

the testimony from minor A and child pornography images of each instance of sexual abuse of all the minors. A rational jury could infer, based on Defendant's filming and photographing the sexual abuse of his victims, that Defendant's purpose of traveling interstate was not only to engage in sexual acts with this victims, but also to preserve his memories of that abuse by capturing them on film. All of the images of Defendant engaging in sexual acts with the victims in Mississippi, Tennessee and Idaho were located in the EDWA.

A rational jury could thus find that Defendant began his travel from his home in the EDWA, bringing with him his cameras and video equipment. He continued his crimes by sexual abusing the minor victims in various jurisdictions. Lastly, he completed his offenses when he returned back to his home in the EDWA where he saved and organized his collection of images he produced while he sexually abused his minor victims. Thus, Defendant's crimes of Aggravated Sexual Abuse of a Child began, continued, and/or were completed within the EDWA and venue was proper in the EDWA.

3. The Dominant, Significant, or Motivating Purpose for Traveling Across State Lines was to Engage in an Illegal Act.

Defendant contends the evidence was legally insufficient to support his convictions of Aggravated Sexual Abuse of a Child, in violation of 18 U.S.C. § 2241(c), and Transportation with Intent to Engage in a Sexual Contact with a

Child, in violation 18 U.S.C. § 2423(a).  Defendant contends sexual misconduct

was not the sole purpose of his travel in interstate.  In this Court, a federal crime

under both 18 U.S.C. § 2241(c) and 18 U.S.C. § 2423, exists if the immoral

activity is one of the dominant, significant, or motivating purposes of the travel.

*See Lukashov*, 694 F.3d at 1118-1119; *United States v. Fox*, 425 F.2d 996, 999

(9th Cir.1970).  It is not necessary, therefore, that the sexual activity be the sole or

only purpose of the trip.

     As to what the United States needed to prove as to the purpose of travel the

district court instructed the jury:

> The Government need not prove that engaging in the illicit
> sexual activity or sexual act was the sole or exclusive purpose
> for Defendant's travel or for the Defendant to cause a minor to
> travel.    A person may have several different purposes or
> motives for traveling, or causing another to travel, and each
> may prompt in varying degrees the act of making the journey.
> The Government need only prove, beyond a reasonable doubt,
> that a dominant, significant or motivating purpose of the travel
> across state boundaries was to engage in the illegal act. In other
> words, the illegal sexual activity must not have been merely
> incidental to the travel.

ECF 126, Jury Instruction No. 17, SER 23.

     The instruction makes clear that the unlawful activities had to be "one of the

dominant purpose'" of Defendant's travel.  This is a common and correct statement

of the law.   Thus, as the district court properly instructed the jury, a person may

have several different purposes or motives for such travel and each may prompt, in

varying degrees, the act of making the journey. What the United States must prove

is that a significant or dominant purpose of the travel from one state to another was

to engage in criminal sexual activity. *See United States v. Kin*slow, 860 F.2d 963,

967 (9th Cir.), ("a federal crime under 18 U.S.C. § 2423 exists if the immoral

activity is 'one of the dominant purposes' of the transportation . . . .[i]t is not

necessary, therefore, that the immoral activity be the only purpose of the trip."), *cert.*

*denied*, 110 S. Ct. 96 (1988) overruled on other grounds; *United States v. Brackeen*,

969 F.2d 827, 829 (9th Cir. 1992); *United States v. Haywar*d, 359 F.3d 631, 637-38

(3d Cir. 2004) (prosecution for interstate transportation of a minor to engage in

criminal sexual activity under 18 U.S.C. § 2423(a)); *United States v. Vang,* 128 F.3d

1065, 1068, 1071-72 (7th Cir. 1997) (prosecution under § 2423(b) and noting that

[c]ourt's use the word dominant to "mean merely 'significant' or 'compelling' or

'efficient.'"); *United States v. Vang*, 128 F.3d 1065, 1068 (7th Cir. 1997); *United*

*States v. Ellis*, 935 F.2d 385, 389-90 (1st Cir. 1991). The requisite intent may be

proved by circumstantial evidence, including "the conduct of the parties both before

and within a reasonable time after the transportation." *United States v. Green*, 554

F.2d 372, 375 (9th Cir. 1977).

Defendant asserts that since he was employed in Mississippi and required to travel there to work that that indicates his primary purpose of travel was employment. While this may have been one of his goals, the jury was entitled to find that Defendant also intended to engage in sexual activity and produce child pornography images. *See United States v. Cryar*, 232 F.3d 1318, 1324 (10th Cir. 2000)(rejecting defendant's insufficient evidence argument that "the dominant purpose of his crossing the state line from Texas to Oklahoma was to earn a living, and not to commit a sexual act"). Defendant also asserts that he wanted to travel to Idaho to go to an amusement park with several minors. Again, while this may have been one of his goals, the jury was entitled to find that Defendant also intended to engage in sexual activity and produce child pornography images

The proper inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Clearly a rational trier of fact could have found that one of the dominant purposes in transporting victims across state lines was to make them available to Defendant for immoral, sexual purposes; to wit to engage in sexual acts with them and, in order to capture those sexual acts on film for his "collection", Defendant produced images of his sexual acts with minors and

returned with those images to the Eastern District of Washington. In this case, there is a wealth of evidence from which the jury could reasonably infer that Defendant caused the transport of his minor victims and traveled in interstate commerce with the intent of engaging in criminal sexual activity.

D.    ALLOWING THE PARENTS OF THE VICTIMS, WHO WERE ALSO WITNESSES, TO ATTEND THE TRIAL DID NOT DEPRIVE THE DEFENDANT OF A FAIR TRIAL.

Defendant alleges he was denied a right to a fair and impartial jury because the district court permitted victims and their families to remain in the courtroom during the testimony at trial. The United States contends there is no evidence that testimony of the parents of the victims, who were also witnesses, was "materially altered" by allowing them to attend the trial in its entirety. Thus, Defendant was not deprived of a fair trial.

1.    Standard of Review

The trial court's decisions to exclude witnesses from the courtroom are reviewed for an abuse of discretion. *See United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002).

2.    Defendant Has Not Established by Clear and Convincing Evidence that the Victim-Witnesses' Testimony was "Materially Altered" by Allowing Them to Attend the Trial in its Entirety.

Prior to trial, the United States filed a motion for Victim –Witnesses, the parents of victims A, B, C and E who would also be witnesses, to attend the trial

37

pursuant to 18 U.S.C. § 3771(a)(3). ECF 101. The Defendant objected to the

constitutionality of 18 U.S.C. § 3771, without any supporting case law. ER 235-236.

As an offer of proof of how Defendant believed the parents of the victim's testimony

would be altered if they attended the trial, Defense counsel stated he believed the

victim witnesses presence in the courtroom prior to their testimony would create an

opportunity to "bolster their credibility". ER 237.

> In granting the United States' motion, the district court stated:

> The [c]ourt recognizes that victims, including the victims' parents, have
> the right to attend the trial absent clear and convincing evidence that
> the victim, or victims' parents' testimony, is highly likely to change if
> permitted to attend the entire trial. The Government's proffered
> testimony from victims includes identification, history of the
> relationship between the victim and the Defendant, and authentication
> of records. At this point, the [c]ourt cannot say it is highly likely that
> attending the trial will alter the victims' testimony. However, the [c]ourt
> reserves the right to exclude victims if certain evidence or testimony
> arises which raises concerns regarding alteration of victim witness
> testimony. The parent of Persons D and parent of Persons B, C and E
> may attend the trial unless otherwise ordered by the [c]ourt at a later
> date.

ECF 106, ER 23-25. *Id*. However, the district court noted Defendant reserved:

> ….the right to orally move to exclude those victim-witnesses over the
> course of the trial if he feels there is a high risk of material alteration of
> a victim-witness's testimony if they stay in the courtroom for particular
> evidence/testimony.

*Id*. Nothing in the record that indicates Defendant again raised this issue

or orally moved to exclude victim-witnesses during trial.

While witnesses are generally barred from watching other witnesses' testimony until after they are excused by the court as a witness, 18 U.S.C. § 3771 of the "Crime Victim's Rights", established the victim's right to attend the trial. The Statute provides in relevant part:

(a)   Rights of crime victims. A crime victim has the following rights:

****

(3)   The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

18 U.S.C. § 3771(a)(3).  A crime victim, then, has the conditional right not to be excluded from trial.  *See generally United States v. Charles,* 456 F.3d 249 (1st Cir. 2006).  Further, Section 3771 speaks to the exclusion of the witness from "other testimony." According to the very terms of Section 3771, the court may only exclude the witness from testimony upon a specific finding "by clear and convincing evidence that it is highly likely, not merely possible, that the victim-witness will alter his or her testimony." *In re Mikhel*, 453 F.3d 1137, 1139 (9th Cir. 2006). As the *Mikhel* Court went onto say,

[b]ecause there is always a possibility that one witness will alter his testimony based on the testimony of another, were this the standard, a District Court could without exception exclude crime victims, and

39

> Congress's intent to abrogate Rule 615 with respect to crime victims
> would be rendered meaningless.

*Id.* The *Mikhel* Court imposed a materiality standard on Section 3771(a)(3) as well, remanding the case to the district court to consider whether clear and convincing evidence proves that the victim-witnesses' testimony will be "materially altered" if they are allowed to attend the trial in its entirety. *Id. (*citing *United States v. Johnson*, 362 F.Supp.2d 1043, 1056 (N.D. Iowa 2006).

In the case at bar, the testimony of the parents of the minor victims under the age of 18 was limited to how members of their family meet and became friends with the Defendant and included the identification of photographs of their minor children and other records. Prior to trial, and even after trial, the Defendant did not and has not established by clear and convincing evidence that the victim-witnesses' testimony would be or was "materially altered" by allowing them to attend the trial in its entirety. Thus, the district court properly allowed the parents/victim-witnesses to attend the trail. There is no evidence their testimony was materially altered because they were allowed to attend trial. Nor is there any evidence Defendant was denied a fair trial.

## E.     NO JUROR MISCONDUCT OCCURRED

Defendant claims that a juror was asleep during testimony, but admits he never objected to this during trial, and he questions the length of deliberations

necessary to reach a verdict. These allegations were the subject of an evidentiary hearing before the district court on April 14, 2016. ECF 140. After consideration of these issues and after the taking of testimony of several jurors by the district court these claims failed. The United States contends there is no evidence of juror misconduct and that while justice was swift, it was fair.

1.     Standard of Review

The standard of review of a trial court's decisions regarding jury incidents is abuse of discretion. *See United States v. Simtob*, 485 F.3d 1058, 1064 (9th Cir. 2007); *United States v. Martinez-Martinez*, 369 F.3d 1076, 1081-82 (9th Cir. 2004) (noting "extremely deferential standard"). "Our review ultimately is limited to determining whether the District Court, in view of all the circumstances, so abused its discretion that [the defendant] must be deemed to have been deprived of his Fifth Amendment due-process or Sixth Amendment impartial-jury guarantees." *Id.* (internal quotation omitted).

The district court's denial of a motion for a new trial based on allegations of juror misconduct is also reviewed for an abuse of discretion. *See United States v. Rosenthal*, 454 F.3d 943, 949 (9th Cir. 2006). The district court's findings of fact relating to the issue of juror misconduct are reviewed for clear error. *See United States v. Long*, 301 F.3d 1095, 1101 (9th Cir. 2002).

41

Defendant concedes he did not raise the issue of whether one of the jurors was asleep during testimony and that, pursuant to Fed.R.Crim.P. 52(b), the standard of review is that of plain error.  Docket No. 5 at 16.

> 2. <u>After an Evidentiary Hearing, the District Court Determined There Was Not Any Juror Misconduct.</u>

Defendant reasserts his claim, also made in his Motion for New Trial (ECF 131) that a juror was asleep during testimony and he questions the length of deliberations necessary to reach a verdict.  After consideration of these issues and after the taking of testimony of several jurors by the district court, Defendant's Motion for a New Trial was denied. ECF 141, ER 11-12.

Defendant claims in his appeal, without reference to a particular juror number or name, that "the juror in question was not attending to the testimony of the government's expert witness and his opinion whether the videos the witness had reviewed indicated the children were actually incapacitated…" Docket No. 5 at 21. In Defendant's Motion for New Trial, he alleged five bases for a new trial, including his claim that Juror No. 2 fell asleep during portions of testimony during trial.  ECF 131.

On April 14, 2016, the district court held an evidentiary hearing regarding this issue and questioned Jurors Two and Three regarding the allegation that Juror Two slept through a portion of the expert testimony of the government's witness, Dr.

Thomas Satterfield. ECF 141. Defendant has never provided any proof that Juror

Two actually slept during a crucial part of the trial.

During the evidentiary hearing, Juror Two testified he didn't think he was a

sleep and explained sometimes he would close his eyes to listen. ECF 186 at 13-14.

After hearing testimony from Juror Two and Juror Three, the district court issued an

Order Denying Defendant's Motion for New Trial which states:

> Juror Three testified that while she did not recall which day it occurred,
> she did poke Juror Two during testimony when he was resting his head
> on his hand with his eyes closed. She indicated that she did not know
> whether or not he was asleep, but felt that it appeared inappropriate.
> Juror Two testified that he was not sleeping, but that he does sometimes
> listen with his eyes closed and may have done so on one or more
> occasion during the trial. Based on this testimony, the Court concluded
> that Defendant suffered no prejudice.

ECF 141 at 1. The district court found:

> Based on the testimony, it appears that Juror Two remained wakeful
> and attentive during the course of the trial. Even if Juror Two had
> briefly nodded off, and there is no evidence that he did, the duration
> was brief and the testimony that he may have missed would not have
> deprived Defendant of a fair trial.

ECF 141 at 2.

Even if Juror Two nodded off during a brief part of the trial that is not, *per*

*se*, a violation of a criminal defendant's right to due process, a fair trial, or an

impartial jury. *Tanner v. United States*, 483 U.S. 107, 126-27 (1987). *See also*

*United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995) ("[T]he presence of all

awake jurors throughout an entire trial is not an absolute prerequisite to a criminal trial's ability to reliably serve its function as a vehicle for determination of guilt or innocence. A single juror's slumber is thus not per se plain error." *United States v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987) (finding no violation of due process or the right to a fair trial and impartial jury when a juror napped through part of the trial testimony), (internal citations omitted)).

In the case at bar, Defendant has not demonstrated that a juror was sleeping or inattentive during the course of a trial, and if so how the alleged error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S 619, 637 (1998). In other words, Defendant has never established how he "was prejudiced to the extent that he did not receive a fair trial." *Estes v. Texas*, 381 U.S. 532, 542 (1965). Where a party fails to demonstrate that a sleeping juror missed testimony which was helpful to his case and otherwise fails to demonstrate any prejudice resulting from the juror's inattentiveness, a new trial is not warranted. *See United States v. Tierney*, 947 F.2d 854, 868 (8th Cir. 1991). In fact, in *Tierney,* the Eighth Circuit noted, "the courts have universally taken the view that the party claiming error must also demonstrate that as a result of the lack of attention the juror failed to follow some important or essential part of the proceedings." *ld*. at 868 quoting *Inattention of*

*Juror from Sleepiness or Other Cause as Ground for Reversal or New Trial*, 88

A.L.R.2d 1275 (1963)).  In *Tierney* the court found that the general assertion that

jurors slept through critical parts of the party's presentation of evidence and

cross-examination of witnesses was 'too vague to establish prejudice." *Id.* at 869.

In this case, Defendant has not made even such a general assertion of prejudice.

Given that Defendant alleges this occurred on only one occasion and the

fact that a recess was requested and immediately granted, the record does not

support a finding that defense counsel should have acted in any other matter.  Just

as every incident of juror misconduct does not require a new trial, *United States v.*

*Hendrix*, 549 F.2d 1225, 1229 (9th Cir.), *cert. denied*, 434 U.S. 818 (1977), not

every incident of a juror closing their eyes needs to be reported to the court.

Defendant concedes on appeal that he did not raise the issue of a jury

sleeping during trial and that this issue is reviewed on plain error.  Docket No. 5

at 16.  In this case, the district court held an evidentiary hearing and took

testimony from several of the jurors.  There is no evidence of plain error in the

district court's finding that no jury misconduct occurred such that Defendant was

denied a fair trial.

Finally, Defendant has failed to establish that the verdict was manifestly

unjust.  Although the jury's decision was swift, that does not per se establish juror

misconduct, nor is it a basis for error. The United States submits there was overwhelming evidence of Defendant's guilt, Defendant did not present a defense, and the evidence was evaluated and determined by a unanimous jury to establish beyond a reasonable doubt Defendant's guilt. Given the overwhelming evidence in this case and the lack of a viable defense given the weight of the evidence, the fact that the jury rendered a verdict after approximately two hours of deliberation also did not deny Defendant a fair trial. Thus, Defendant was not denied a fair trial by jury.

## VII. CONCLUSION

For the foregoing reasons, the United States respectfully submits that the judgment of conviction and sentence should be affirmed.

MICHAEL C. ORMSBY
United States Attorney

s/*Stephanie J. Lister*

Stephanie J. Lister
Assistant United States Attorney
Attorney for Plaintiff-Appellee

46

## STATEMENT OF RELATED CASES

Counsel for the plaintiff-United States certifies that no cases are pending in this Court that are deemed related to the issues presented in the instant appeal.

s/*Stephanie J. Lister*

Stephanie J. Lister
Assistant United States Attorney
Plaintiff-Appellee

## CERTIFICATE OF SERVICE

It is hereby certified that on January 30, 2017, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  Participants who are registered CM/ECF users will be served by the appellate CM/ECF system.

    Bryan Whitaker
    Attorney at law
    815 W. 7th Ave, Suite 303
    Spokane, WA 99204

I further certify that some participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participants:

    N/A

                s/*Stephanie J. Lister*

                Stephanie J. Lister
                Assistant United States Attorney
                Plaintiff-Appellee

## BRIEF FORMAT CERTIFICATION

Pursuant to Fed. R. App. P. 32(a)(7)(c) and Ninth Circuit Rule 32-1, I certify

that the brief is not subject to the type-volume limitations of Fed. R. App. P.

32(a)(7)(B) because the brief complies with Fed. R. App. P 32(a)(1)-(7) and is a

principal brief of 11,625 words.

Dated January 30, 2017.

MICHAEL C. ORMSBY
United States Attorney

s/*Stephanie J. Lister*

Stephanie J. Lister
Assistant United States Attorney
Attorney for Plaintiff-Appellee